**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STRIKE 3 HOLDINGS, LLC,**<br><br>            **Plaintiff,**<br><br>     **v.**<br><br>**JOHN DOE subscriber assigned IP address 100.11.204.106,**<br><br>            **Defendant** | **CIVIL ACTION NO. 20-5122** |

**<u>MEMORANDUM OPINION</u>**

**Rufe, J.**                                                                                **March 30, 2022**

Plaintiff Strike 3 Holdings, LLC moves for default judgment against Defendant Bernard S. Gray pursuant to Federal Rule of Civil Procedure 55(b)(2).[1] To date, Defendant has not answered the Amended Complaint or entered an appearance, despite multiple attempts at service at his home address and two successful instances of personal service on Defendant's wife at that address. For the reasons stated below, Plaintiff's motion will be granted.

## I.    BACKGROUND

Plaintiff is a Delaware limited liability company that owns and distributes pornographic films.[2] Plaintiff distributes these films in the United States through subscription-based websites, licensing to third-party broadcasters, and the sale of physical DVDs.[3] Plaintiff regularly copyrights these films.

---

[1] Mot. Default J. [Doc. Nos. 15 & 16].

[2] Am. Compl. [Doc. Nos. 5 & 8] ¶ 3.

[3] Am. Compl. [Doc. Nos. 5 & 8] ¶ 13.

"BitTorrent is a system designed to quickly distribute large files over the Internet."[4] BitTorrent allows a user to simultaneously download (or "torrent") a file from multiple other BitTorrent users who each have copies of that file on their personal computers.[5] It does this by algorithmically assigning "Info Hashes" to fragments of data in each file, which can then be downloaded in parallel from multiple different computers and then reassembled.[6] These Info Hashes are each specific to the underlying data fragments, and together are specific to the digital file; any change to the data in the file will result in a different set of Info Hashes.[7]

Since Plaintiff's works are frequently pirated, Plaintiff "has developed, owns, and operates [a copyright] infringement detection system, named 'VXN Scan,'" which searches for unauthorized BitTorrent files that purport to be Plaintiff's copyrighted works.[8] VXN Scan torrents complete copies of the suspected files, which are reviewed by Plaintiff's staff and compared to Plaintiff's copyrighted works. If the files are determined to be copyrighted, VXN Scan then uses the Info Hash values to download the data fragments again, and documents the IP addresses from which the fragments originate (i.e., the IP addresses whose users are distributing identical copies of the reviewed file).[9]

On October 15, 2020, Plaintiff filed suit under the Copyright Act against a John Doe defendant (assigned IP address 100.11.204.106) based on IP address information drawn from

---

[4] Am. Compl. [Doc. Nos. 5 & 8] ¶ 17.

[5] Am. Compl. [Doc. Nos. 5 & 8] ¶ 17.

[6] Am. Compl. [Doc. Nos. 5 & 8] ¶¶ 23–26.

[7] Am. Compl. [Doc. Nos. 5 & 8] ¶ 21.

[8] Am. Compl. [Doc. Nos. 5 & 8] ¶¶ 27, 32.

[9] Am. Compl. [Doc. Nos. 5 & 8] ¶¶ 32–35.

VXN Scan.[10] Shortly thereafter Plaintiff sought leave to serve a third-party subpoena on Verizon Fios, the internet service provider associated with this IP address, to determine to whom the IP address is assigned.[11] Verizon Fios's response to the subpoena identified the IP address as assigned to a Verizon Fios customer living at a specific residence in Philadelphia, Pennsylvania.[12]

This customer was not Defendant Bernard S. Gray.[13] However, investigation by Plaintiff indicated that Defendant lived at this residence during the period of infringement, that Defendant had public social media profiles indicating a professional interest in comedy, filmmaking, and screenwriting, and that the IP address associated with the Philadelphia residence had torrented multiple works relating to these interests, including a number of "Master Class" instructional videos related to comedy, filmmaking, and screenwriting.[14]

In January 2021, Plaintiff filed two versions of the Amended Complaint—the first a redacted version that did not name Defendant,[15] and the second an unredacted version filed under temporary seal by leave of the Court that provided identifying details of Defendant.[16] The First Amended Complaint and the associated summons was served on February 20, 2021 at Defendant's address on a woman who identified herself as Defendant's wife.[17] To date,

---

[10] 17 U.S.C. § 101 et seq.; *see* Compl. [Doc. No. 1] ¶¶ 5–7.

[11] Mot. Leave Serve Third-Party Subpoena [Doc. No. 3].

[12] Am. Compl. [Doc. Nos. 5 & 8] ¶ 48.

[13] Am. Compl. [Doc. Nos. 5 & 8] ¶ 48.

[14] Am. Compl. [Doc. Nos. 5 & 8] ¶¶ 49–52.

[15] Am. Compl. [Doc. No. 5] (redacted).

[16] Am. Compl. [Doc. No. 8] (unredacted).

[17] *See* Summons [Doc. No. 10]; Suppl. Aff. Supp. Service of Process [Doc. Nos. 27-1 & 29] at ECF page 3.

Defendant has not responded to the Amended Complaint and has not sought an extension of the response deadline.

After the Clerk entered default, Plaintiff moved for entry of default judgment.[18] On February 1, 2022, the Court held a hearing on Plaintiff's Motion for Default Judgment. Prior to that hearing, and pursuant to the Court's orders, Plaintiff served notice of the hearing, the Motion for Default Judgment and another copy of the Amended Complaint on Defendant via personal service at Defendant's address to a woman who again identified herself as Defendant's wife.[19] Defendant did not attend the hearing.

Following the hearing, the Court ordered Plaintiff to again serve copies of Plaintiff's Motion for Default Judgment on Defendant and allowed Plaintiff to file supplemental briefs addressing "(a) whether the technical operation of the BitTorrent protocol and the operation of Plaintiff's VXN Scan software, as described in the Amended Complaint, sufficiently establishes that the identified BitTorrent uploader was in possession of readable files containing Plaintiff's intellectual property; and (b) whether the Amended Complaint sufficiently establishes that each piece of allegedly infringed copyrighted media qualifies as a separate 'work' for the purposes of calculating statutory damages under 17 U.S.C. §504(c)(1)."[20] Plaintiff filed supplemental briefing and supporting affidavits in response to this order, and again attempted to serve relevant

---

[18] Mot. Default J. [Doc. No. 15].

[19] *See* Certificate Service [Doc. No. 22] at ECF page 4; Suppl. Aff. Supp. Service of Process [Doc. Nos. 27-1 & 29] at ECF page 3.

[20] Order [Doc. No. 23] at 2–3.

documents on Defendant by certified mail and personal service.[21] The Court now addresses Plaintiff's motion for default judgment and the related filings.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a properly served defendant who fails to file a timely responsive pleading.[22]

When considering a motion for default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."[23] To grant default judgment, a court first "must ascertain whether the unchallenged facts constitute a legitimate cause of action."[24] If the complaint pleads a legitimate cause of action, the question of whether a court should grant default judgment is governed by the *Chamberlain* factors: (1) the potential for prejudice to the plaintiff if default judgment is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether the defendant's failure to respond is due to culpable conduct.[25]

---

[21] Although four attempts at personal service in early February were unsuccessful, Defendant was also served three copies of the documents by United States Postal Service—once by regular mail and twice by electronically signed certified mail. *See* Certificate Service [Doc. No. 25] ¶¶ 2–15, Ex. A.

[22] *See Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

[23] *DIRECTV, Inc. v. Albright*, No. 03-4603, 2003 WL 22956416, at *1 (E.D. Pa. Dec. 9, 2003) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

[24] *Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 433 (E.D. Pa. 2015) (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)).

[25] *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

## III.  DISCUSSION

### A.  Default Judgment

As a threshold issue, the Court finds that Plaintiff has sufficiently served the Amended Complaint on Defendant.[26] Once service is established, the Court must then determine whether the Amended Complaint alleges facts that allow the Court to draw the reasonable inference that Defendant is liable for copyright infringement.[27] The elements of copyright infringement are "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[28]

Plaintiff has alleged that it owns valid copyrights for each work, and provided a unique publication date, copyright registration date, and copyright registration number for each of the 97 works that Defendant allegedly infringed.[29] Plaintiff has also alleged that Defendant copied constituent elements of those works when Defendant "downloaded, reproduced, and distributed Plaintiff's works through the BitTorrent protocol."[30] The detail about the operation of VXN Scan provided in the Amended Complaint and the description of Plaintiff's subsequent investigation

---

[26] "A default judgment entered when there has been no proper service of the complaint is, *a fortiori,* void, and should be set aside." *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). Plaintiff has documented two successful attempts to serve the Amended Complaint on an adult residing at Defendant's dwelling, in accordance with Federal Rule of Civil Procedure 4(e)(2)(B). In addition, Plaintiff has made multiple unsuccessful attempts at personal service and repeatedly served copies of relevant filings to Defendant by USPS certified and regular mail.

[27] *Sweda v. Univ. of Penn.*, 923 F.3d 320, 325–26 (3d Cir. 2019). Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation— other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.")

[28] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

[29] *See* Am. Compl. Ex. A [Doc. Nos. 5-1 & 8-1].

[30] Mot. Default J. [Doc. No. 15-1] at 2. For a more in-depth discussion of the BitTorrent protocol and how the file sharing system works, see Am. Compl. [Doc. No. 5] ¶¶17–46; *see also* Suppl. Mem. L. Supp. Mot. Default J. [Doc. No. 26], at 2–3.

sufficiently allege that Defendant, and not any other resident of the dwelling to which the IP address was assigned, was responsible for the infringements.[31]

Each of the three *Chamberlain* factors weighs in favor of granting default judgment. First, Plaintiff will be prejudiced if default judgment is denied because Defendant has failed to answer or otherwise defend this matter. Thus, "denying the request for default judgment will prejudice Plaintiff because it has no other means of vindicating its claims."[32] Second, Defendant does not appear to have a litigable defense to Plaintiff's claim, as he has "not asserted any defense in this action, whether by responding to the Complaint or by responding to this Motion . . . or by otherwise contesting the allegations."[33] Lastly, Defendant caused the default because he has failed "to engage in the litigation process and to offer [any] reason for this failure,"[34] which can be considered culpable conduct.

### B. Relief Sought

Plaintiff seeks multiple forms of relief. First, Plaintiff seeks a permanent injunction, enjoining Defendant from continued distribution of Plaintiff's copyrighted works and requiring Defendant to delete any infringing files from computers in Defendant's possession or control.[35]

---

[31] *Compare Malibu Media, LLC v. Flanagan*, No. 13-CV-5890, 2014 WL 2957701, at *1 (E.D. Pa. July 1, 2014) (finding that identity was sufficiently alleged to grant default judgment in a BitTorrent copyright case where Plaintiff identified "Defendant's online activities, hobbies, and interest[s] [that] implicate he was the infringer, and not his wife.") *with Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1145 (9th Cir. 2018) (dismissing copyright claims where the plaintiff alleged only that the defendant was the subscriber assigned the infringing IP address. "Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle. A plaintiff must allege something more to create a reasonable inference that a subscriber is also an infringer.").

[32] *Commodity Futures Trading Comm'n v. Salerno*, No. 18-1585, 2020 WL 7122418, at *2 (E.D. Pa. Sept. 23, 2020) (internal quotations omitted).

[33] *Id.* at 3 (internal quotations omitted).

[34] *Id.*

[35] Mot. Default J. [Doc. Nos. 15, 16] ¶¶ 2–4; Mem. L. Supp. Mot. Default J. [Doc. Nos. 15-1 & 16-1] at 4–5.

Next, Plaintiff seeks minimum statutory damages in the amount of $72,750.[36] Finally, Plaintiff

seeks a statutory award of certain litigation costs, in the total amount of $590.[37]

### 1. Permanent Injunction

A district court may "grant temporary and final injunctions on such terms as it may deem

reasonable to prevent or restrain infringement of a copyright."[38] "In deciding whether to grant a

permanent injunction, the district court must consider whether: (1) the moving party has shown

actual success on the merits; (2) the moving party will be irreparably injured by the denial of

injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to

the defendant; and (4) the injunction would be in the public interest."[39] Courts in this District

applying these factors in granting default judgment have regularly held that injunctive relief is

appropriate against a repeat infringer who has actively distributed copyrighted works, "to ensure

the misconduct does not recur."[40] An injunction that only requires Defendant to delete infringing

works and refrain from distributing Plaintiff's intellectual property is narrowly tailored to the

purposes of the Copyright Act, prevents ongoing harm to Plaintiff by preventing the free

distribution of Plaintiff's intellectual property, and presents minimal harm to Defendant as it only

enjoins activity that is already prohibited by statute.

---

[36] Mot. Default J. [Doc. Nos. 15, 16] ¶ 5; Mem. L. Supp. Mot. Default J. [Doc. Nos. 15-1 & 16-1] at 6.

[37] Mot. Default J. [Doc. Nos. 15, 16] ¶ 6; Mem. L. Supp. Mot. Default J. [Doc. Nos. 15-1 & 16-1] at 6–7.

[38] 17 U.S.C. § 502(a).

[39] *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

[40] *Malibu Media, LLC v. Flanagan*, No. 13-5890, 2014 WL 2957701, at *5 (E.D. Pa. July 1, 2014); *Malibu Media, LLC v. Brickhouse*, No. 18-3139, 2019 WL 4061754, at *4 (E.D. Pa. Aug. 27, 2019).

2.   *Statutory Damages*

"Unlike liability, damages 'cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing held pursuant to [Rule] 55(b)(2),' unless damages are 'liquidated or computable' or the plaintiff otherwise submits such proof without a hearing."[41] The Copyright Act provides that a copyright owner may elect to recover statutory damages–rather than actual damages–for each work infringed.[42] The provision further provides that "[f]or the purposes of this subsection, all the parts of a compilation or derivative work constitute one work."[43]

Here Plaintiff has elected to seek the minimum statutory damages provided by the Copyright Act of $750 per infringement, and so no hearing is necessary to establish the harm suffered by Plaintiff.[44] However, to calculate damages under the Copyright Act in any default judgment, the Court must make a factual finding about the number of infringed "works." 17 U.S.C. §504(c) provides that "[f]or the purposes of [calculation of statutory damages], all the parts of a compilation or derivative work constitute one work."[45] Where a plaintiff moving for default judgment claims multiple infringements, the Court must determine whether each allegedly infringed property should be considered a "separate work" for the purpose of § 504.

---

[41] *Brickhouse*, 2019 WL 4061754 at *2 (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1152 (3d Cir. 1990)).

[42] 17 U.S.C. § 504(c)(1).

[43] *Id.*

[44] Mem. L. Supp. Mot. Default J. [Doc. No. 15-1, 16-1] at 6. "In default judgment cases [under the Copyright Act], courts can order the minimum statutory damages without conducting a hearing." *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 544 (E.D. Pa. 2008).

[45] 17 U.S.C. § 504(c)(1).

When determining whether a work is part of a compilation for purposes of § 504(c)(1), a court must look at "whether the protected works have value only in and through their composite whole (and thus meeting the definition of a 'compilation'[]) or instead have standalone value at the level of 'one work.'"[46] Considerations like the existence of separate copyrights for each element of a copyrighted work are informative, but not dispositive.[47] The focus is "on whether the plaintiff—the copyright holder—issued its works separately, or together as a unit,"[48] and whether each individually copyrighted work has its own "copyright life."[49] For instance, courts have held that each infringed episode of a television series constitutes a separate work for purposes of § 504(c) where each episode has independent economic value.[50] Similarly, courts

---

[46] *Sullivan v. Flora, Inc.*, 936 F.3d 562, 571 (7th Cir. 2019).

[47] *Sony Music Ent. v. Cox Comms. Inc.*, 464 F. Supp. 3d 795, 821 (E.D. Va. 2020) (citation omitted). Pieces of media individually registered under separate copyrights may still be considered part of a collective work for the purposes of calculating statutory damages. *See Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 141 (2d Cir. 2010) (noting that "[t]he fact that each [work] may have received a separate copyright is irrelevant to [statutory damages] analysis"). Conversely, even if multiple works are registered under a single copyright form, they may sometimes still qualify as separate individual works for the purposes of calculating statutory damages under 17 U.S.C. § 504(c). *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1117 (1st Cir. 1993).

[48] *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 101 (2d Cir. 2016) (internal quotations omitted).

[49] *Capitani v. World of Miniature Bears, Inc.*, No. 3:19-CV-00120, 2021 WL 3362044, at *11 (M.D. Tenn. Aug. 2, 2021) ("A protected work has standalone value if the evidence shows that work has distinct and discernable value to the copyright holder . . . The inquiry and fact finding demanded by § 504(c)(1) is more functional than formal, taking account of the economic value, if any, of a protected work more than the fact that the protection came about by an artist registering multiple works in a single application. The necessary finding requires a focus on where the market assigns value. By way of an analogy, imperfect though it may be, think in the first instance of the multiple protected works as a quilt and then ask whether any one individual patch has discernable, independent economic value—whether once separated from the quilt a particular patch lives its own copyright life (as "one work")—or instead whether the value lies in the patches' combined assembly into the quilt as a whole (as a "compilation")." (quoting *Sullivan v. Flora, Inc.*, 936 F.3d 562, 571–72 (7th Cir. 2019)).

[50] *See, e.g.*, *Gamma Audio & Video, Inc.*, 11 F.3d at 1117 (focusing on whether each television episode "has an independent economic value and is, in itself, viable"); *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) (stating that "separate copyrights are not distinct works unless they can 'live their own copyright life'") (internal quotations omitted).

have held that illustrations constitute separate works for purposes of § 504(c) when each illustration has "distinct and discernible value."[51]

The Amended Complaint and Plaintiff's supplemental briefing supports a finding that each of Plaintiff's 97 works was created, registered, and issued separately,[52] constituting separate works under § 504. Plaintiff cites to *Arista Recordings LLC v. Lime Group. LLC*,[53] which held that several record companies could "recover a statutory damage award with respect to each sound recording," on an album.[54] The court in *Arista* explained that "[a]lthough the Copyright Act states that 'all parts of a compilation . . . constitute one work,' it does not say that any work included in a compilation cannot also exist as a separate, independent work."[55] Thus, the court concluded that each individual track infringed upon was a "work" issued by the plaintiffs, "to which Plaintiffs may seek to recover a statutory damage award."[56] Like the plaintiffs in *Arista*, Plaintiff issued and released each of its works individually.[57] Even though 15 of the 97 videos were later distributed on DVD, and some DVD distributions compiled more than one of the videos in question,[58] this subsequent compilation does not negate the fact that Plaintiff's works were originally issued individually. Therefore, each work "has independent economic value and

---

[51] *Capitani*, 2021 WL 3362044, at *11–12 (holding that each image in question was a separate work with distinct and discernable value in part because the images' values were not "derived solely from their combination and assembly" and because each separate image had its own license).

[52] Suppl. Mem. L. Supp. Mot. Default J. [Doc. No. 26], at 6–7; *see also* Am. Compl. [Doc. No. 5] Ex. A.

[53] No. 06-5936, 2011 WL 1311771 (S.D.N.Y. Apr. 4, 2011).

[54] *Id.* at *4.

[55] Suppl. Mem. L. Supp. Mot. Default J. [Doc. No. 26], at 8 (quoting *Arista Recs. LLC v. Lime Grp. LLC*, No. 06-5936, 2011 WL 1311771, at *3 (S.D.N.Y. Apr. 4, 2011)).

[56] *Id.*

[57] Am. Compl. [Doc. Nos. 5 & 8] Ex. A (listing separate publication dates for each work).

[58] *See* Suppl. Mem. L. Supp. Mot. Default J. [Doc. No. 26] at 7.

is, in itself, viable,"[59] and each of the 97 works is entitled to a separate award.[60] As Plaintiff has provided substantial proof that Defendant infringed on 97 separate copyrighted works by Plaintiff, 17 U.S.C.A. § 504 entitles Plaintiff to minimum statutory damages of $750.00 per infringed work, for a total amount of $72,750.00.

###### 3. Fees and Costs

Under 17 U.S.C. § 505, a district court may, in its discretion, award costs to the prevailing party in a copyright infringement suit.[61] These costs may be awarded on default judgment.[62] Plaintiff has provided documentation of certain costs associated with this action, which comprise a $350.00 statutory filing fee,[63] a $50.00 administrative fee,[64] and a $190.00 charge to serve process on Defendant.[65] The Court finds that these costs are reasonable in the context of this litigation, and will award Plaintiff costs in an amount of $590.00 pursuant to § 505.[66]

### IV.   CONCLUSION

Plaintiff Strike 3 Holdings, LLC has repeatedly served Defendant Bernard S. Gray with the Amended Complaint, and the Court has offered multiple opportunities for Defendant to

---

[59] *Gamma Audio & Video, Inc.*, 11 F.3d at 1116–17 (citing to *Walt Disney Co.*, 897 F.2d at 569).

[60] *Playboy Enter., Inc. v. Sanfilippo*, No. 97-0670, 1998 WL 207856, at *5 (S.D. Cal. Mar. 24, 1998).

[61] 17 U.S.C. § 505.

[62] *See Malibu Media, LLC v. Brickhouse*, No. 18-3139, 2019 WL 4061754, at *3–4 (E.D. Pa. Aug. 27, 2019).

[63] *See* 28 U.S.C. § 1914(a); Pl.'s Mot. Default J. Ex. A [Doc. No. 16-2] ¶ 17.

[64] *See* Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2014); Pl.'s Mot. Default J. Ex. A [Doc. No. 16-2] ¶ 17.

[65] Pl.'s Mot. Default J. Ex. A [Doc. No. 16-2] at ECF pages 5–6.

[66] The Court notes that while Plaintiff has likely incurred additional service charges since entering the Motion for Default Judgment, including supplemental service specifically ordered by the Court, Plaintiff has not provided documentation of those charges.

appear. Defendant has not appeared before this Court or responded to the Amended Complaint in any manner. The Amended Complaint states a claim against Defendant, and the *Chamberlain* factors weigh in favor of granting default judgment. For the foregoing reasons, Plaintiff's Motion for Default Judgment will be granted, and Plaintiff will be awarded statutory damages totaling $72,750.00 and costs associated with this litigation in the amount of $590.00. An order will be entered.